# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1322

_____

United States of America

*Plaintiff - Appellee*

v.

Michael J. Vandenberg

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Dubuque

_____

Submitted: January 14, 2019
Filed: February 15, 2019
[Unpublished]

_____

Before GRUENDER, WOLLMAN, and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

Michael J. Vandenberg pled guilty to one count of possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). After Vandenberg repeatedly violated his conditions of supervised release while living with

his parents, the district court[1] revoked his supervised release, sentenced him to an additional 12 months imprisonment and 9 years of supervised release, and imposed a new special condition of supervised release that barred him from living with his parents. Vandenberg appeals, challenging this condition. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

While living with his parents and adult sister in Dubuque, Iowa in May 2003, Vandenberg used his computer to send a threatening message to a police department website. While investigating the threats, law enforcement discovered child pornography on Vandenberg's computer. Pursuant to a plea agreement, Vandenberg pled guilty to one count of possession of child pornography, and the district court sentenced him to 64 months imprisonment and 15 years supervised release. It imposed a special condition of supervised release prohibiting Vandenberg from having contact with minors without the prior written consent of his probation officer. Furthermore, it required that Vandenberg register as a sex offender in his home state. In 2011, following his release from prison, Vandenberg moved back into his parents' home and began supervised release.

In October 2017, probation officers visited the Vandenberg home for an inspection and found Vandenberg in the front yard, raking leaves with a 12-year-old boy. Vandenberg told the officers the child was his nephew who lived in another town. When the officers spoke to Vandenberg's mother, however, she revealed that the boy was actually the next-door neighbor, who frequently came to do yard work with Vandenberg. Mrs. Vandenberg said that she did not feel her son's contact with the minor was a problem because she was home with them supervising. She shared her view that the no-contact requirement was "ridiculous" and told the officers that the boy's mother knew of Vandenberg's sex-offender status. Revocation Hr'g Tr. 33,

---

[1] The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

Dist. Ct. Dkt. 130. Vandenberg, upon further questioning, continued to lie to probation officers about the boy's identity and whether he had been alone with the boy until finally Mrs. Vandenberg said, "All right, Mike, we might as well be honest." Revocation Hr'g Tr. 11, 28, Dist. Ct. Dkt. 130. Vandenberg then admitted he had been in the garage with the boy for several hours the previous day.

At Vandenberg's revocation hearing, the boy's mother testified that her son regularly helped Vandenberg with yard work since the fall of 2016 and that Mrs. Vandenberg paid the boy for his work. She said no member of the Vandenberg family had told her that Vandenberg was a registered sex offender. When Mrs. Vandenberg testified, she denied telling the probation officers that the boy's mother knew that Vandenberg was a sex offender. She stated that, based on information she claimed to have received from a probation officer, she did not believe having the boy at her residence violated Vandenberg's terms of release because it occurred outside the home. However, a testifying probation officer denied this, stating, "I always instruct [people] that no contact with children meant at all times, no contact at any place, anywhere." Revocation Hr'g Tr. 25, Dist. Ct. Dkt. 127.

In finding that the government proved Vandenberg had violated his terms of release, the district court emphasized both Vandenberg's and his mother's dishonesty, explaining that their behavior led the court to doubt the family's compliance with future terms of release. It stated that it did not find Mrs. Vandenberg credible because "she lied to the probation office. There would be no reason to do that if she believed [she and her son] were in full compliance with the conditions of release." Revocation Hr'g Tr. 27, Dist. Ct. Dkt. 127. The district court then revoked Vandenberg's supervised release and sentenced him to 12 months imprisonment and 9 years of supervised release. It added a new condition of supervised release which barred Vandenberg from residing with his parents. In doing so, the court stated, "I don't see Mr. Vandenberg returning to the home of his parents, because they do not support the Probation Office. . . . His mother lies in order to protect him. She does not appreciate

the seriousness of his conviction in federal court and does not feel that the Court's orders need to be followed." Revocation Hr'g Tr. 32, Dist. Ct. Dkt. 127.

Vandenberg appeals, first contending that the new condition constitutes a "sweeping restriction[] on [an] important constitutional right[]" that our court should be "particularly reluctant to uphold." United States v. Crume, 422 F.3d 728, 733 (8th Cir. 2005). As Vandenberg notes, we have previously held that a district court erred in imposing a condition of supervised release that prevented a father from having any unsupervised contact with his daughter. United States v. Davis, 452 F.3d 991, 994-95 (8th Cir. 2006); see also United States v. Hobbs, 845 F.3d 365, 369 (8th Cir. 2016) (vacating a condition that barred all contact between a defendant and her husband). However, Vandenberg's condition does not impose the same broad restriction on his familial relationships as did the conditions in Davis and Hobbs. Here, Vandenberg may have contact with his parents under the district court's condition; he simply may not live with them. Thus, this limited restriction as to Vandenberg's place of residence is not a "sweeping restriction[]" on familial association which we have been reluctant to uphold. Crume, 422 F.3d at 733.

For this reason, we test the condition under the typical statutory standard set by 18 U.S.C. § 3583(d). Section 3583(d) has two requirements:

> [First,] the condition [must] be 'reasonably related' to the nature and characteristics of the offense and the defendant, the deterrence of criminal conduct, the protection of the public from any further crimes of the defendant, and the defendant's correctional needs. Second, the condition must not involve any 'greater deprivation of liberty than is reasonably necessary' to advance deterrence, protect the public from further crimes by the defendant, and promote the defendant's correctional needs.

Davis, 452 F.3d at 994 (internal citations omitted).

Here, the district court tied the special condition to Vandenberg's specific circumstances, namely Vandenberg's mother's role in helping Vandenberg violate his terms of release and her subsequent lies about the violations. Unlike Hobbs, in which "the evidence did not justify effectively divorcing [the defendant] during supervision to achieve any valid sentencing purpose[,]" 845 F.3d at 369, the district court expressly noted the evidence that Vandenberg's parents were uncooperative with the probation office and imposed the condition with the goal of increasing Vandenberg's future cooperation. Furthermore, the probation officer discovered Vandenberg in the presence of a child at his parents' residence, and through testimony at the revocation hearing, the district court learned that the child regularly visited the residence. It thus tailored the condition to suit Vandenberg's characteristics and correctional needs, as required by § 3583(d). While it is true that Vandenberg will have to find a new place to reside, he receives $800 a month in disability income, and although he contends that he has a limited ability to care for himself, he has been able to help his father and sister with various activities including yard work, car repairs, and other necessities of daily life. Therefore, the condition does not involve a great deprivation of liberty than necessary.

Vandenberg also alleges the district court made various clearly erroneous factual findings in justifying the special condition. We review a district court's findings of fact related to conditions of supervised release for clear error. See United States v. Goodon, 742 F.3d 373, 376 (8th Cir. 2014). Here, testimony at the revocation hearing supported the district court's conclusion that Vandenberg could and should live separately from his parents. For instance, though we note that the "district court's credibility determinations are virtually unreviewable on appeal[,]" United States v. Bridges, 569 F.3d 374, 378 (8th Cir. 2009), we emphasize that the district court's conclusion that Mrs. Vandenberg was lying at the revocation hearing is supported by her inconsistent statements throughout the record. Additional testimony at the hearing revealed that Vandenberg helped his family members with various activities of daily life and received $800 a month in income. With respect to

Vandenberg's contention that the district court overestimated his mental cognizance, one of his probation officers testified that depression, not memory, was Vandenberg's most prominent psychological complaint, and three mental health professionals who evaluated Vandenberg in prison determined that he exaggerated the severity of his memory problems. Thus, there is plenty in the uncontested record to support the district court's interpretation of Vandenberg's case, and its factual findings were not clearly erroneous.

For the foregoing reasons, we affirm.

_____